### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

**ERIC ANDERTON, Individually and as Administrator of the Estate of John Leonard Anderton,**

      **Plaintiff,**

      **v.**

**UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS, KARL A. OAKMAN, AND COLIN WARD,**

      **Defendants.**

**Case No. 2:25-cv-02016-HLT-BGS**

### MEMORANDUM AND ORDER

John Anderton (Anderton) was fatally shot by police in 2023. Plaintiff Eric Anderton is the administrator of his estate and brings this § 1983 civil-rights action against Colin Ward, who is the law-enforcement officer who shot Anderton; Karl Oakman, the Kansas City, Kansas police chief; and the Unified Government of Wyandotte County/Kansas City, Kansas. Plaintiff claims that Officer Ward used excessive force in violation of the Fourth Amendment. He claims Chief Oakman and the Unified Government are liable for Officer Ward's actions. And Plaintiff claims all three defendants violated state law. Defendants move for summary judgment. Doc. 19.

Officer Ward is entitled to qualified immunity because Plaintiff has not demonstrated that he unreasonably used deadly force or that his conduct violated a clearly established constitutional right. The supervisory-liability and *Monell*[1] claims based on Officer Ward's conduct also fail because he did not commit a constitutional violation. And Plaintiff has not opposed Defendants'

---

[1] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).

argument that Plaintiff's state-law claims fail. The Court therefore enters summary judgment in favor of Defendants on all claims.

## I.    BACKGROUND[2]

Officer Ward shot and killed Anderton the evening of February 3, 2023. Officer Ward was on duty, in uniform, and in a marked car at the time. He was dispatched based on a report that two individuals had overdosed at 5414 Haskell. Officer Ward wore a body camera. His patrol car also had a camera. Both cameras recorded video of Officer Ward's interaction with Anderton.

Other officers with the Kansas City, Kansas Police Department arrived at 5414 Haskell while Officer Ward was enroute. Officer Jeffrey Gardner saw Anderton leaving the driveway with a bicycle. Officer Gardner thought Anderton appeared to be hurrying away from the house.

Someone in the house told Officer Gardner Anderton's name, that Anderton was a "roommate," and that he had been present at the time of the overdoses. Officer Gardner reported on the police radio, "There's a guy that just left here. White male, red sweatshirt on a bicycle went westbound down Haskell. He's the only one that was here that might know what's going on if anybody can find him." Doc. 19-6 at 1. Officer Gardner also asked dispatch to check Anderton's name. Dispatch responded over the radio that Anderton had an active warrant for trespassing.

Officer Ward found Anderton pushing a bicycle on the road. He exited his patrol car and said to Anderton, "What's going on brother? Why are you leaving that house?" Anderton answered, "They had [inaudible], so I left." Officer Ward responded, "Well, they're in there dying and you just left brother. What's the deal?" Anderton answered, "I was helping them, and I was, like, I can't do no more. I have COPD."

---

[2]    For purposes of summary judgment, the Court sets forth only those uncontroverted facts required to reach its decision. To the extent necessary, the Court discusses additional or disputed facts in analyzing the arguments.

Anderton denied having identification with him but gave his correct name to Officer Ward when asked. Officer Ward said, "We'd rather you stay there until we get there so we know what's going on with them. You knew they were in a bad-bad medical state, didn't you?" Anderton responded, "I was helping them until Tony took over and then I left." Officer Ward asked whether Anderton had anything illegal on him. Anderton broke eye contact and answered no. Officer Ward asked a few more identification questions and Anderton answered.

Officer Ward noticed while speaking to Anderton that his jacket pocket appeared to have something heavy in it.[3] He felt that Anderton was being deceptive and that Anderton was potentially armed. Officer Ward wanted to frisk Anderton for weapons on a search incident to his arrest on the outstanding warrant. He therefore told Anderton, "Put the bike down and put your hands on top of your head. Okay." What happened next was a rapid series of events that ended with Anderton's death.

Anderton, while turning to his left and pushing the bicycle, said "Aw, fuck that," and began running from Officer Ward. Officer Ward yelled, "Hey, stop," and pursued Anderton on foot. Anderton dropped the bicycle. Officer Ward states that he saw Anderton's right hand go to his right jacket pocket, where Officer Ward believed Anderton may have had a weapon. Officer Ward yelled, "Hey, stop reaching!" Anderton did not stop reaching. Officer Ward saw Anderton's right

---

[3] Plaintiff disputes this fact and others, characterizing them as self-serving versions of events only supported by Officer Ward's affidavit. Plaintiff contends that Officer Ward's personal observations that cannot be verified by video (but are not contradicted by video) are insufficient to support certain factual statements. Plaintiff has deposed Officer Ward. That the testimony may be "self-serving" is not an independent and wholly sufficient reason to disregard it on a summary judgment record. "[V]irtually any party's testimony can be considered 'self-serving,' and self-serving testimony is competent to oppose summary judgment." *Greer v. City of Wichita, Kan.*, 943 F.3d 1320, 1325 (10th Cir. 2019). Plaintiff's burden on summary judgment is to present affirmative evidence to show a genuine issue of material fact. He cannot create a fact question by merely asserting that a jury could disbelieve the defendant. *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998). Plaintiff urges the Court to look at the circumstantial evidence discrediting Officer Ward's testimony as directed by *Alcala v. Ortega*, 128 F.4th 1298, 1306 (10th Cir. 2025). The Court has reviewed all the evidence in accord with *Alcala*, but it does not create a genuine issue of material fact here.

fist trying to remove an object from his right jacket pocket. He thought he saw the silver slide of a handgun.[4] The video shows Anderton appear to reach across his midsection with his left hand, as well. Anderton turned and bladed his body toward Officer Ward and stopped running. Officer Ward yelled, "Stop reaching!" again. The still shot of the video at this moment shows this:



Officer Ward thought he saw a gun in Anderton's right hand and thought Anderton was going to shoot him.[5] Officer Ward then fired his own gun twelve times in under five seconds. Anderton turned his back toward Officer Ward as Officer Ward fired his weapon. Anderton fell.

Officer Ward stopped shooting but could not see Anderton's right hand or the gun. He retreated to cover behind a car and waited for additional officers to arrive, while repeatedly ordering Anderton to "put your hands out." Ward reported on the radio, "I still have him at gunpoint. I think he's got a gun in his hand. I need a shield." When additional officers arrived, Officer Ward advised them, "Hey, keep an eye on his hands. He was pulling something out of his

---

4    This statement is neither confirmed nor contradicted by video recording. The videos do not show a weapon prior to Officer Ward opening fire and fatally shooting Anderton.

5    Officer Ward acknowledged in his deposition that Anderton did not actually point a gun at him, and Officer Ward did not instruct him to drop his weapon.

pocket." Other officers secured Anderton and rendered first aid. They rolled him on his back, revealing a black and silver revolver beneath Anderton. It was inoperable in a conventional way because it was missing the trigger mechanics and a grip. It was not a semiautomatic handgun with a slide (like Officer Ward thought he saw). And it is not unlawful under Kansas law for a person of Anderton's age to carry a concealed firearm.

Five bullets hit Anderton with the following trajectories determined by autopsy:

> a. One bullet entered Anderton's left chest 3 inches left of midline and exited the left lateral, upper chest 6 inches left of midline. The wound direction was front to back and was confined to the anterior (front) left chest wall.

> b. One bullet entered Anderton's anterior aspect of the right axilla 6 inches right of midline and exited the right lateral (back) chest in the right axilla (the area on the human body directly under the shoulder joint) 7 inches right of midline. The wound direction was front to back, right to left and downward.

> c. One bullet entered Anderton's left side, entering 2 inches left of midline, and exiting at the left axilla 8 inches left of midline. The wound direction was right to left, back to front and slightly upward. Also, the wound was confined to the subcutaneous tissue.

> d. One bullet struck Anderton's left upper back 4-1/2 inches left of midline, fracturing left 4th and 5th posterior ribs 4 and 5, lacerating the left lung, then fracturing the anterior ribs 1st and 2nd ribs exiting to the right side of suprasternal notch, 1 inch right of midline. The wound direction was back to front, upward and left to right.

> e. One bullet struck Anderton[] about 1 inch right of midline and exiting at the right temporal occipital scalp about 3-1/2 inches right of midline. The wound path is back to front, upward and left to right. While striking the head, the bullet did not penetrate the skull.

Doc. 19 at 2 (citing Doc. 19-2 Autopsy Report). Anderton tested positive for fentanyl, norfentanyl, methamphetamine, and amphetamine.

## II.    STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## III.    ANALYSIS

Defendants move for summary judgment on all claims. Officer Ward asserts qualified immunity. He is entitled to it because there is no constitutional violation and he did not violate Anderton's clearly established rights. Plaintiff seeks additional discovery if the Court is inclined to grant Defendants' motion, but has not shown why additional discovery is necessary. The claims against Police Chief Oakman and the Unified Government fail because there is no underlying constitutional violation. And Plaintiff voluntarily dismisses the state-law claims, which leaves nothing else to resolve. The Court grants the motion for summary judgment.

### A.    Excessive Force Claim Against Officer Ward

Plaintiff alleges that Officer Ward violated the Fourth Amendment's prohibition against excessive force. He claims that Officer Ward is liable in his individual capacity for using excessive force and for recklessly creating the need to use deadly force. Officer Ward contends that his use

of force was objectively reasonable under the circumstances and that he did not violate clearly established law, giving him the protection of qualified immunity.

Qualified immunity shields public officials from liability unless their conduct violates clearly established statutory or constitutional rights that a reasonable person would have known about. *Arnold v. City of Olathe, Kan.*, 35 F.4th 778, 788 (10th Cir. 2022). A presumption of immunity arises when a defendant asserts qualified immunity from suit under 42 U.S.C. § 1983. *Kerns v. Bader*, 663 F.3d 1173, 1180 (10th Cir. 2011). The burden then shifts to the plaintiff. *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). To overcome the presumption, a plaintiff must show that "(1) the officer['s] alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation, such that every reasonable official would have understood, that such conduct constituted a violation of that right." *Reavis ex rel. Estate of Coale v. Frost*, 967 F.3d 978, 984 (10th Cir. 2020) (citation and internal quotation marks omitted). If the plaintiff cannot satisfy both prongs, the defendant is entitled to qualified immunity. *Olsen*, 312 F.3d at 1312.

At the summary-judgment stage, a court considers the facts in a light most favorable to the plaintiff when evaluating the first prong. *Id.* If a plaintiff can demonstrate a constitutional violation and that the constitutional right was clearly established, the burden shifts back to the defendant to prove there is no genuine issue of material fact. *Id.*

### 1.    Qualified Immunity – Constitutional Violation

The Court first considers whether Plaintiff can demonstrate a constitutional violation. Plaintiff alleges Officer Ward used excessive force when he shot and killed Anderton. An allegation of excessive force that occurs before arrest is evaluated under the Fourth Amendment.

*Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014). Courts apply an objective reasonableness standard. *Arnold*, 35 F.4th at 788.

Reasonableness is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). It is an objective standard judged on the totality of the circumstances. *Arnold*, 35 F.4th at 789. Reasonableness does not require that officers use alternative or less intrusive means if the conduct is otherwise reasonable. *See Medina v. Cram*, 252 F.3d 1124, 1133 (10th Cir. 2001). Officers are required to make split-second judgment calls on the scene, and it is not the role of a court to judge an officer's conduct with the benefit of hindsight. *Id.*; *see also Fry ex rel. Estate of Fry v. City of Galena, Kan.*, 450 F. Supp. 2d 1236, 1241-42 (D. Kan. 2006).

The use of deadly force is not objectively unreasonable if "a reasonable officer in [the defendant's] position would have had probable cause to believe there was a threat of serious physical harm to [himself] or to others." *Sevier v. City of Lawrence, Kan.*, 60 F.3d 695, 699 (10th Cir. 1995). Ultimately, the Supreme Court has identified three factors that should be considered in evaluating the reasonableness of the use of force: (1) the severity of the crime, (2) whether the suspect poses an immediate threat to the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade officers. *Graham*, 490 U.S. at 396.

### a.      Use of Force at the Moment of the Shooting

The Court first considers whether Officer Ward acted reasonably at the moment of the shooting.[6] *See Medina*, 252 F.3d at 1132 ("The primary focus of our inquiry, therefore, remains on whether the officer was in danger at the exact moment of the threat of force.").

---

[6]    The Court does not intend to suggest that it is only looking at the precise moment of the shooting. The totality-of-the-circumstances analysis also requires consideration of facts leading to that moment. *See Barnes v. Felix*, 145 S. Ct. 1353, 1356 (2025) (rejecting "moment-of-threat" rule and holding that "[t]o assess whether an officer acted reasonably in using force, a court must consider all the relevant circumstances, including facts and events leading

**Severity of the Crime.** The first *Graham* factor looks to the severity of the crime. 490 U.S. at 396. The parties disagree about what constitutes the relevant crime. Defendants discuss aggravated assault on a law enforcement officer and interference as the relevant crimes. Plaintiff discusses leaving the scene of an overdose as the relevant crime. It is the severity of the crime prompting the stop that matters, not the severity of the crime feared. *Barnes*, 145 S. Ct. at 1358. The relevant crime is somewhat unclear here, but the lack of clarity is immaterial. Officer Ward stopped Anderton because he left the scene of a double overdose. But he also learned that Anderton had an outstanding warrant for trespass. Neither is a severe or violent crime. But they are also not minor legal issues. This factor is therefore neutral.

**Immediate Threat.** The second *Graham* factor is the immediacy of the threat to the safety of officers or others. 490 U.S. at 396. Courts consider additional non-exclusive factors in evaluating the immediacy of the threat, including whether the officers ordered the suspect to drop the weapon, whether any hostile motions were made with the weapon toward officers, the distance between the officers and the suspect, and the manifest intentions of the suspect. *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008).

Applying these additional factors to this case suggests Officer Ward faced a very real and immediate threat when Anderton reached into his pocket, ignored Officer Ward's commands to stop reaching, and turned his body back toward Officer Ward. The Court reviewed the body camera footage of the encounter between Officer Ward and Anderton, which reflects the undisputed facts. It is challenging to watch. It shows an intense six-second series of events from when Anderton took off to Officer Ward's first shot. The situation was fluid but in a very condensed timeframe.

---

up to the climactic moment"). The Supreme Court in *Barnes* specifically declined to address the separate question "whether or how an officer's own 'creation of a dangerous situation' factors into the reasonableness analysis." 145 S. Ct. at 1360. What is clear is that the Court must consider the totality of the circumstances, which includes a timeline broader than merely that of the moment of the shooting. The Court does so here.

One moment Officer Ward was chasing a fleeing suspect. The next moment, the suspect dropped his bicycle, made grabbing motions with his right hand and then his left, turned his body, and stopped. Officer Ward yelled at him twice to stop reaching, but Anderton did not. Officer Ward then shot and killed Anderton.

During this time period, Officer Ward had probable cause to believe there was a threat of serious physical harm to his own safety. All four *Larsen* factors lead to this conclusion. First, Officer Ward ordered Anderton to "put the bike down and put your hands on top of your head," to "stop," and then to "stop reaching," and to "stop reaching" again. Anderton did not comply with any of these orders. Second, Anderton took hostile motions when he continued reaching into his pocket and pulling out the gun (although the gun could not be seen in the video, Anderton's suspicious actions with his right hand and then his left hand are visible), turned his body in a preparatory stance (referred to by Officer Ward as "bladed his body"), and stopped running. Third, Anderton remained at all times in close proximity to Officer Ward, roughly a lane of traffic away at most. And fourth, Anderton's manifest intention was to prevent Officer Ward from seizing him, patting him down, or taking him into custody. All of these factors indicate that Officer Ward reasonably believed he faced a real danger of serious physical harm.

Plaintiff tries to call the reasonableness (and actuality) of Officer Ward's belief into question by suggesting his testimony is not credible about what he saw and whether he truly perceived Anderton to be a threat. The Fifth Circuit considered an officer's split-second decision to shoot where he was the only surviving eye-witness in *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379 (5th Cir. 2009). The officer in *Ontiveros* believed the suspect was armed and dangerous based on the suspect's prior actions and threats shortly before the officers executed a warrant for his arrest. This part was not disputed. But the plaintiff attempted to discredit the officer's testimony

that he thought the suspect was reaching for a gun in a chest-level boot when the officer shot. The Fifth Circuit upheld the district court's grant of summary judgment to the officer. In doing so, the Fifth Circuit cited a line of cases upholding the use of deadly force when the suspect refused instructions and took actions that an officer could reasonably interpret as reaching for a weapon. *Ontiveros*, 564 F.3d at 385 (citing *Reese v. Anderson,* 926 F.2d 494 (5th Cir. 1991) (upholding deadly force when the suspect repeatedly refused to keep hands raised and appeared to reach for an object); and *Young v. Killeen,* 775 F.2d 1349 (5th Cir. 1985) (upholding deadly force when the suspect refused instructions and reached down in vehicle as if to grab a weapon)). The Fifth Circuit described the plaintiff's efforts to discredit the officer as an attempt to "imply a speculative scenario that has no factual support." *Ontiveros*, 564 F.3d at 383. Plaintiff's efforts here to discredit Officer Ward's testimony about what he saw and perceived are similarly speculative.

Plaintiff contends the Court should apply *Tennessee v. Garner*, 471 U.S. 1, 11 (1985), instead of the *Graham/Larsen* factors. Plaintiff is misguided. Plaintiff characterizes Anderton as a fleeing suspect who "pose[d] no immediate threat to the officer and no threat to others." Doc. 31 at 7 (quoting *Garner*, 471 U.S. at 11). But the video and undisputed facts show that Officer Ward had probable cause to believe Anderton posed a threat of serious physical harm to him. Anderton dropped his bike, freeing up his right hand. He began reaching into his pocket, apparently struggling to get something out. He turned his body back toward Officer Ward, stopped, and did not throw his hands in the air or make any other signal of surrender. The video instead shows actions that are entirely consistent with preparing to use a weapon in close proximity to and directed at Officer Ward. A reasonable officer does not need to look into the barrel of a firearm before using force to protect his own life. *Est. of Valverde by & through Padilla v. Dodge*, 967 F.3d 1049, 1063 (10th Cir. 2020) (the constitution does not require police officers to gamble with

their own lives); *see also Anderson v. Russell*, 247 F.3d 125, 131 (4th Cir. 2001) ("[A]n officer is not required to see an object in the suspect's hand before using deadly force."). Indeed, an officer may be mistaken about whether a suspect intends to use force; he needs only a reasonable belief to render his own use of force objectively reasonable. *Thomas v. Durastanti*, 607 F.3d 655, 666-69 (10th Cir. 2010); *see also Anderson*, 247 F.3d at 131. Officer Ward had a very short amount of time to react to Anderton's actions in a tense situation. The Court has watched the video multiple times. A reasonable jury could not find that Officer Ward acted objectively unreasonably given the rapidly developing situation and the risk to his own life. The second *Graham* factor weighs in Officer Ward's favor.

**Active Evasion or Resistance.** The third *Graham* factor is whether the suspect was trying to evade or resist officers. 490 U.S. at 396. Here, Anderton left a double overdose. He initially appeared cooperative when Officer Ward encountered him and answered Officer Ward's questions. But then Anderton ceased compliance and ran. The only reasonable inference is he did not want to be patted down or taken into custody. This, in turn, suggested that Anderton had something on him that he didn't want taken away. This factor weighs in favor of Officer Ward as Anderton was actively resisting Officer Ward's attempt to arrest him on his outstanding warrant.

Given this analysis, Officer Ward's use of force at the moment of the shooting was objectively reasonable.

### b.    Reckless Conduct Creating Need to Use Deadly Force

Even if Officer Ward reasonably believed it was necessary to use deadly force, the Court still must determine whether he recklessly created the need to use such force. *Thomas*, 607 F.3d at 667. This inquiry is another consideration in evaluating the totality of the circumstances. *Arnold*, 35 F.4th at 789-90. Courts in the Tenth Circuit apply the *Graham* factors both to the precise

moment that deadly force is used and to conduct "immediately connected" to the use of deadly force. *Id.* at 790. In other words, a court will consider whether reckless or deliberate conduct unreasonably created the need to use such force, but the allegedly reckless conduct must also be "immediately connected" to the use of force. *See Medina*, 252 F.3d at 1132. Such "immediately connected" conduct must be reckless; merely negligent behavior is not actionable. *See Pauly v. White*, 874 F.3d 1197, 1220 (10th Cir. 2017).[7]

Courts should not view police encounters with the benefit of 20/20 hindsight. *See Graham*, 490 U.S. at 396-97; *Larsen*, 511 F.3d at 1259-60 (stating that the use of force should be judged from an "on-scene perspective" (internal quotation and citation omitted)). Indeed, the Supreme Court has admonished that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." *Id.* at 396 (internal quotation and citation omitted).

Plaintiff contends that Officer Ward escalated the situation by ignoring the fact that Anderton's demeanor suggested a diminished capacity and by pursuing Anderton when he ran. It is correct that "[t]he mentally ill or disturbed condition of the suspect is a relevant factor in

---

[7]   The Court has already mentioned the Supreme Court's recent decision *Barnes v. Felix.* Before *Barnes*, the Supreme Court decided *County of Los Angeles v. Mendez*, 581 U.S. 410 (2017). *Mendez* overruled the Ninth Circuit's "provocation rule," which permitted an excessive force claim "where an officer intentionally or recklessly provokes a violent confrontation, if the provocation is an independent Fourth Amendment Violation." 581 U.S. at 426-27. But *Mendez* also explicitly declined to consider the question of whether courts should take "into account unreasonable police conduct prior to the use of force that foreseeably created the need to use it." *Id.* at 429 n*. The Tenth Circuit has subsequently noted that "the concept that pre-seizure conduct should be used in evaluating the reasonableness of an officer's actions is not universally held among other circuits," but the Supreme Court has declined to resolve the issue and therefore Tenth Circuit precedent on this issue remains good law. *Pauly*, 874 F.3d at 1219 n.7.

determining reasonableness of an officer's responses to a situation." *Estate of Ceballos v. Husk*, 919 F.3d 1204, 1214 (10th Cir. 2019) (noting the district court's correct statement of the law). But it is only one consideration. *Clark v. Colbert*, 895 F.3d 1258, 1264 (10th Cir. 2018). And it does not change the outcome here.

The Court observed Anderton and Officer Ward's demeanor on the video. Officer Ward asked Anderton routine identification questions and Anderton answered without displaying signs of diminished capacity.[8] Anderton's speech, tone, affect, and pace appeared even and normal. He seemed to make appropriate, periodic eye contact. Anderton was not slurring his words, fidgeting, stumbling, or searching for answers. Officer Ward then ordered Anderton to put his bicycle down and place his hands on his head. Officer Ward's voice remained calm. He did not yell or take an aggressive tone. His posture remained nonthreatening. Officer Ward did not escalate the situation. Anderton's own actions were what propelled the events into motion, not Officer Ward's actions. *See Davidson v. City of Opelika, Ala.*, 2016 WL 8315786, at *6 (M.D. Ala. 2016) ("Davidson controlled the pace of the events and Officer Hancock simply had to react at Davidson's pace."). There is nothing about Officer Ward's actions leading up to the shooting that would change the *Graham/Larsen* analysis the Court already conducted. It was Anderton himself who chose to escalate the situation by fleeing, reaching, and ignoring Officer Ward's commands.

In sum, the Court finds that, after evaluating the relevant conduct of Officer Ward, the use of deadly force was objectively reasonable under the circumstances. Plaintiff contends that the only evidence of reasonableness is Officer Ward's self-serving account. But Plaintiff only points out that Officer Ward <u>could be</u> lying. He does not point to contradictory evidence in the record

---

[8]  Plaintiff states without elaboration that "Anderton's demeanor should have alerted Officer Ward that Anderton's capacity to reason was diminished. Afterall, Officer Ward was responding to a substance-related medical emergency." Doc. 31 at 9-10. Plaintiff does not explain what about Anderton's demeanor should have been a cue to Officer Ward to react differently to Anderton's sudden decision to flee. The Court observes none in the videos.

indicating a genuine issue of material fact as to whether he <u>was</u> lying. The video is not subject to multiple interpretations requiring jury resolution. Anderton ran, dropped his bike, reached, turned, and stopped running, creating probable cause to believe he was a threat. And nothing Officer Ward did immediately before or in response created the need to use deadly force. No reasonable jury could conclude otherwise. Plaintiff has not shown that there was a constitutional violation. Officer Ward is therefore entitled to qualified immunity.

### 2.    Qualified Immunity – Clearly Established Authority

To avoid a qualified-immunity defense, Plaintiff must not only show that the facts demonstrate a constitutional violation, but also that the violation was clearly established under Tenth Circuit or Supreme Court precedent. *See Pauly*, 874 F.3d at 1222. The Court finds that Plaintiff has not demonstrated a constitutional violation. But even if he had, the Court would still find Officer Ward entitled to qualified immunity because Plaintiff has not identified precedent that would have put him on notice that his actions violated the law.

To defeat a qualified-immunity defense, a plaintiff must show that the defendant's conduct violates clearly established law. *Id.* Specifically, if at the time of the conduct, the contours of the right are clear and a reasonable officer would have known that his actions violate the right, the officer is not entitled to qualified immunity. *See id.* There need not be a case that is factually identical. *Id.* But "existing precedent must have placed the statutory or constitutional question beyond debate" *Id.* (internal quotation and citation omitted). "[S]pecificity is especially important in the Fourth Amendment context, where . . . [i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation and citation omitted). "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and

thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Mullenix*, 577 U.S. at 13).

Plaintiff contends three cases clearly established the law governing Officer Ward's conduct: *Allen v. Muskogee*, 119 F.3d 837 (10th Cir. 1997), *Ceballos*, 919 F.3d 1204, and *Walker v. City of Orem*, 451 F.3d 1139 (10th Cir. 2006).

*Allen* involved officers who responded to a call about an individual threatening suicide. 119 F.3d at 839-41. The officers found the individual sitting in a car and holding a gun. *Id.* Officers approached the vehicle, but the nature of their approach was disputed. Some witnesses said one officer ran up to the car screaming. Other testimony was that the officer approached cautiously. Officers ultimately shot the suspect when he pointed the gun toward them. The Tenth Circuit held that the differences in eyewitness testimony about the officers' approach were material fact disputes about "whether the officers' actions were reckless and precipitated the need to use deadly force." *Id.* at 841.

*Ceballos* involved differing testimony about how officers responded to a report that a suspect had one or more baseball bats and was "acting crazy," drunk, and probably on drugs. 919 F.3d at 1209-1211. The officers shot the suspect when he began walking toward them, either quickly or slowly, with the bat still in his hands and defying their commands to stop and drop the bat. Again, the facts relevant to the objective reasonableness determination were disputed.

*Walker* involved a report of a suicidal party and differing testimony about what happened during a twelve-second encounter before officers shot the suicidal party. 451 F.3d at 1156-60. Some witnesses said it was clear the victim only had a knife and was holding it to his own wrist. The officers testified that they believed the victim had a gun. The Tenth Circuit accepted the

plaintiff's version of the facts, drew all reasonable inferences, and affirmed the district court's denial of qualified immunity.

The Court disagrees that these cases are factually similar enough to put Officer Ward on notice that his conduct violated Anderton's clearly established constitutional rights. Plaintiff contends these cases clearly establish that officers act unreasonably when they aggressively confront an armed individual with diminished capacity to reason. Even were the Court to accept that these cases clearly establish such a point, they are still factually inapposite to what occurred here. The cases relied on by Plaintiff all involved factual disputes about the officers' response. As the Tenth Circuit held in *Pauly*, *Allen*'s holding that the reasonableness inquiry includes an evaluation of an officer's actions leading up to the use of force is relevant to determining whether excessive force was used but "it cannot alone serve as the basis for concluding that an officer's particular use of excessive force was 'clearly established' . . . because the facts are completely different." *Pauly*, 874 F.3d at 1223; *see also Kisela*, 138 S. Ct. at 1153 ("Where constitutional guidelines seem inapplicable or too remote, it does not suffice for a court simply to state that an officer may not use unreasonable and excessive force, deny qualified immunity, and then remit the case for a trial on the question of reasonableness.").

In determining whether the law is clearly established, "the dispositive question is whether the violative nature of <u>particular</u> conduct is clearly established." *Pauly*, 874 F.3d at 1222 (emphasis in original) (internal quotation and citation omitted). But Plaintiff does not direct the Court to any cases demonstrating that the factual circumstances of this case were clearly unconstitutional. The Court finds that, even if Plaintiff could demonstrate a constitutional violation, Officer Ward would still be entitled to qualified immunity because Plaintiff has not demonstrated that his conduct violated clearly established law.

**B.      Supervisory and *Monell* Liability Against Police Chief Oakman and the Unified Government**

In addition to the excessive-force claim against Officer Ward stemming from the shooting, Plaintiff also asserts § 1983 claims against Police Chief Oakman for his actions and inaction as Officer Ward's supervisor, and against Chief Oakman and the Unified Government for establishing policies, practices, customs, and procedures that caused the violation of Anderton's constitutional rights.[9]

The problem with these claims is Officer Ward did not use excessive force. No constitutional violation occurred. A supervisor cannot be liable for failing to supervise in the absence of an underlying constitutional violation. *Rowell v. Bd. of Cnty. Comm'rs of Muskogee Cnty., Okla.*, 978 F.3d 1165, 1174-75 (10th Cir. 2020). Likewise, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton*, 997 F.2d at 782. The Court has determined that Officer Ward did not use excessive force against Anderton. This finding precludes imposing any liability against Chief Oakman or the Unified Government. *See id.*; *see also Fry*, 450 F. Supp. 2d at 1246.[10] The Court grants summary judgment to Chief Oakman and the Unified Government for the § 1983 claims against them.

---

[9]    A municipality cannot be held liable under § 1983 on a theory of respondeat superior. *See Monell*, 436 U.S. at 694. Rather, a municipality can only be held liable for the actions of its employees if the controversial action was taken pursuant to an official policy of the municipality. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993).

[10]    The Court has found that Officer Ward is entitled to qualified immunity. Qualified immunity does not apply to municipalities, and a municipality is not shielded from liability where its employee is granted qualified immunity based only on the second prong of that analysis, clearly established law. *Hinton*, 997 F.2d at 782-83. But where an individual officer is entitled to qualified immunity because the conduct did not amount to a constitutional violation, that is akin to a decision on the merits of a plaintiff's claim. *Id.* at 783. "In such a case, a finding of qualified immunity may preclude the imposition of any municipal liability." *Id.*

### C.    State Law Claims

Plaintiff originally asserted state-law claims against all defendants. Defendants moved for summary judgment on the state-law claims, and Plaintiff does not oppose Defendants' state-law arguments. More specifically, Plaintiff affirmatively states, "Plaintiff agrees to the dismissal of Counts IV-VI." Doc. 31 at 22. This portion of Defendants' motion is granted without further discussion as unopposed. Even if Plaintiff did oppose Defendants' arguments, the Court would decline to exercise supplemental jurisdiction over the state-law claims as there are no remaining federal claims.

### D.    Plaintiff's Rule 56(d) Request for Additional Discovery

Under Rule 56(d), where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," a court can defer or deny the summary-judgment motion, allow additional discovery, or "issue any other appropriate order." "In the Tenth Circuit, a non-movant requesting additional discovery under Rule 56(d) must specify (1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable [the party] to obtain those facts and rebut the motion for summary judgment." *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (internal quotation and citation omitted). Whether to grant a Rule 56(d) motion is within the district court's discretion. *Trans-W. Petroleum, Inc. v. U.S. Gypsum Co.*, 830 F.3d 1171, 1175 (10th Cir. 2016). But a district court's discretion under Rule 56(d) is limited when qualified immunity is at issue. *Jones v. City & Cnty. of Denver, Colo.*, 854 F.2d 1206, 1211 (10th Cir. 1988) (discussing Rule 56(f), but Rule 56(d) replaced Rule 56(f) in 2010 without substantive change). A Plaintiff's Rule 56(d) affidavit must show how discovery will refute objective

reasonableness when qualified immunity is challenged. *Lewis v. City of Ft. Collins*, 903 F.2d 752, 758 (10th Cir. 1990) (same).

Plaintiff does not seek discovery on matters that would bear on the qualified-immunity analysis for Officer Ward. Plaintiff does not seek discovery on what occurred or didn't occur during the shooting. And Plaintiff does not seek discovery on Officer Ward's actions or perceptions. Plaintiff instead asks for discovery on policies and training, "after-action reports or internal investigations" from other officers present or responding to the scene, and the City's practices or customs for officer discipline and evaluating use of force. These matters are not essential for a determination of whether Officer Ward's actions were objectively reasonable (or, for that matter, whether the law was clearly established such that qualified immunity is inappropriate). Officer Ward was the only officer present before and during the shooting. Plaintiff has access to video from Officer Ward's body camera and in-car camera, and Plaintiff has reviewed Officer Ward's affidavit and deposed him. Plaintiff has not shown that additional discovery is essential to resolve the qualified-immunity issues in this case.

## IV.    CONCLUSION

The Court finds that Officer Ward is protected by qualified immunity because Plaintiff has not demonstrated that he unreasonably used deadly force or that his conduct violated a clearly established constitutional right. Because there was no constitutional violation by Officer Ward, the supervisory-liability and *Monell* claims also fail. And Plaintiff does not contest Defendants' arguments on the state-law claims. Accordingly, the Court enters summary judgment in favor of Defendants on all claims.

THE COURT THEREFORE ORDERS that Defendants' motion for summary judgment (Doc. 19) is GRANTED. The case is closed.

IT IS SO ORDERED.

Dated: November 14, 2025        /s/ *Holly L. Teeter*
                                HOLLY L. TEETER
                                UNITED STATES DISTRICT JUDGE